3.3.0067 Sarah Baxter and Michael Baxter, a comment by Janice Stafford v. Jennifer Dunn, M.D., and the Youth Health Specialist, S.D., affiliates by Scott Howley. Thank you. Good morning. Good morning. Jan Schaffer and I'm the Capitol Plaintiffs, and I just wanted to introduce you to Sarah Baxter and her mother, Ann Fetless. Thank you. May I approach the bench? Please. This is a medical malpractice case. At trial, there were several errors regarding the admission of evidence which severely prejudiced plaintiffs and requires a new trial. Before I go into the facts, I just want to mention that I think it was corrected, but I just want to make sure that on page 11 of my brief, the opening brief, subparagraph 9, should state that Sarah Baxter may not deliver vaginally, but must have a C-section. And I apologize for the error if it's in the brief. Okay. Well, I'm here to discuss three 213 issues of which we believe that the defendants failed to disclose certain opinions in this case. The first issue is previously undisclosed habit testimony by Dr. Dunn and retained experts. The second issue is the previously undisclosed opinion by both Dr. Dunn and her retained expert, Dr. Feldstein, that the vaginal delivery note, which was a medical record authored by Dr. Dunn, was not a reliable source of information. This opinion is case determinative as to liability because it showed that the repair was done in four minutes and all the liability experts agreed that the standard of care to do a proper repair takes 20 minutes. And the third issue is a previously undisclosed opinion from one of Dr. Dunn's retained experts, Dr. Feldstein, that Exhibit 17, a photograph of Sarah's perineum, depicts a third degree tear as opposed to a fourth degree tear. Any one of these three issues alone is a clear violation of Supreme Court Rule 213F3, which requires reversal. Let's go to the habit. Dr. Dunn testified in her deposition that she had no memory whatsoever of what happened that day. She had no memory of repairing Sarah's tear. She doesn't have any memory of what she happened on either inside the hospital or outside the hospital before, during, and after her treatment of Sarah Baxter. Dr. Dunn failed to write an operative note explaining what she saw, how she repaired the tear, and all the details regarding what she saw and how she repaired the tear. Dr. Dunn's 213 disclosure, as well as her retained expert, failed to mention her habit testimony. There is no deposition testimony from any of these individuals discussing her habit. Supreme Court Rule 213F3 places the burden on the party who is offering opinions to disclose all opinions and the basis for those opinions. Supreme Court Rule 213F3 rules are specific and mandatory, and they are to avoid injustice to any party, so when you plan your trial preparation, you know what to expect. It was only on the eve of trial that the defendant informed the plaintiff that she intended to introduce habit testimony. During the pretrial conference, plaintiffs moved in Motion Limiting No. 26 to exclude her habit testimony on the basis that there was a lack of pretrial disclosure and insufficient foundation. Habit Testimony Rule 406 of the Illinois Rules of Evidence states evidence of a habit of a person is relevant to prove that the conduct of a person or organization or particular occasion was in conformity with the habit. The cases Alvarado, Miller, and Hagen stand for the proposition that the conduct in question must be numerous enough so that the conduct becomes semi-automatic. To lay a foundation for habit testimony, Dr. Dunn needed to establish a number of times that she had sutured third and fourth degree tears. At deposition, I inquired of Dr. Dunn as to how many times she repaired third and fourth degrees from the time of residency and up to the time she rendered care to Sarah Baxter. Her answer at deposition that she did not know. At trial, for the first time, Dr. Dunn testified as to the number of times she allegedly repaired these types of lacerations. Plaintiffs were completely standby by this testimony. Dr. Dunn's negligent repair of Sarah's care caused Sarah, at the age of 31, to suffer incontinence to stool and gas, and she can no longer have, well, she has painful sexual relations if she has sexual relations with her husband. All of these conditions are permanent. The plaintiffs had every right to rely on Dr. Dunn's written disclosures, as well as her deposition. By testifying as to her habit, Dr. Dunn violated Supreme Court Rule 213F3, and the trial court abused its discretion, warranting a new trial. Now I'm going to discuss the second issue about the vaginal delivery note, which is another 213F3 violation. The trial court allowed, this was a, okay, this is another previously undisclosed opinion. Dr. Dunn and her retained experts were allowed to testify that the vaginal delivery note, a medical record authored by Dr. Dunn and included in the hospital chart, is not accurate as to time. To the contrary, this medical record tells us how long it took Dr. Dunn to perform her surgical repair of Sarah's perineum. The vaginal delivery note is important because it shows Dr. Dunn completed the repair of Sarah's laceration in four minutes. The undisputed testimony of all experts in this case is that the standard of care to suture these types of repairs takes a minimum of 20 minutes, not four minutes. Baby B was delivered at 121 p.m., the placenta was delivered at 126 p.m., and the laceration repair was completed at 130. The vaginal delivery note is part of the medical record produced by the hospital and was authored by Dr. Dunn. The defense failed to disclose in their 213F3 disclosures that the vaginal delivery note was an unreliable source of the time noted on the record. Plaintiff's experts relied on the vaginal delivery note to determine the amounts of time it took Dr. Dunn to repair Sarah's laceration. Dr. Dunn's testimony and her experts, Dr. Feldstein's testimony, that the vaginal delivery note was an unreliable source of time noted on the record, was a surprise to the plaintiffs because the first time we heard this opinion was at trial. While Dr. Feldstein testified in his deposition that the vaginal delivery note was inaccurate, such a statement is inadmissible because Dr. Feldstein never disclosed the basis for that opinion. In effect, Dr. Feldstein says that he does not believe Dr. Dunn was negligent, and because Dr. Dunn was not negligent, she could not have taken four minutes to repair the laceration, therefore concluding that the medical record must be inaccurate. This is circular reasoning, unsupported by any disclosed factual basis. And the most important is Dr. Dunn and her experts had to testify that her note was inaccurate, because if her note was accurate, then Dr. Dunn deviated from the standard of care. By allowing this testimony in the record, it was a violation of Supreme Court Rule 213F1, and the trial court abused its discretion, which warrants a new trial. And as to the last issue is regarding the photograph. Dr. Feldstein and Dr. Dunn's, Dr. Feldstein, which is Dr. Dunn's retained OBGYN expert, was permitted to give undisclosed opinions regarding Exhibit 17, a photograph of Sarah's perineum, depicted, he gave the opinion that the photograph depicted a third-degree perineal tear, as opposed to a fourth-degree perineal tear. The plaintiff was prejudiced because this photograph was used to undermine the credibility of the plaintiff's subsequent colon rectal treating physician, Dr. Horan Evkerian, who performed subsequent repair surgeries and testified that it was a fourth-degree tear. This testimony also undermined plaintiff's experts, Dr. Hathaway and Dr. Silberman, testimony that it was a fourth-degree tear and not a third. And Dr. Feldstein was allowed to go in front of the jury and testify in detail to specific areas and places on the photographs, explaining why Sarah's tear was not a third-degree tear. If Dr. Feldstein wanted to use the photograph to explain why Sarah's tear was not a third-degree tear, then the defense had the obligations to disclose this information in their 213s. By allowing Dr. Feldstein to testify that the photograph did not depict a third-degree tear, this was a violation of Supreme Court Rule 213, which was an abuse of discretion by the trial court, which warrants a new trial. And just to fill you in on a little fact, my client did have to go after the initial repair. She did end up going to see Dr. Evkerian, who did diagnose a fourth-degree tear, and subsequently she underwent surgery. She had a tear in both the internal and the external sphincters, which created a gap to allow incontinence of stool and gas. And subsequently, after that, because Sarah had another breakdown, but it was only of the outer sphincter, but that was subsequently repaired by Dr. Theodore Stackleretti, who was out of Loyola at the time of the occurrence. And subsequent to that, my plaintiff also suffered great damages. Like I indicated, that sexual relations with her husband became painful because of the scar tissue due to the incorrect repair. The first time, that gets scar tissue. And each subsequent repair, you get scar tissues, which basically, the scar tissue is firm and it's not pliable. So when you have sexual intercourse, it's hard to get the penis in and go from there. Any questions? Are there any questions? So I understand that you're asserting these 213 violations. And the question is, what about, are there, are they sufficient to overcome the, overturn the outcome of the jury verdict? Yes, I think it could, especially on the outcome determinative one. Because, well, if the testimony, you know, I'm, what? Because the trial court has discretion with regards to, substantial discretion with regards to how it handles 213 violations. Yes, and at this time, from what I recall, Your Honor, there was no, it was, the burden was on the defense to show that they actually had disclosed those opinions. And at that point, it wasn't either in the deposition or in the 213 disclosures. And the fact that all, well, like I said, it could have affected because the evidence didn't go in right. You know, I'm entitled to prepare my case based on what the defense gives me. These are significant deviations that allowed the defendants to, the jury to possibly get the wrong impression of what happened at the time of the occurrence and what, like the vaginal delivery note. If that's, if it was inaccurate, then Dr., if it was accurate, then Dr. Dunn deviated from the standard of care. What does it indicate from the delivery notes when it says that she was still pushing at the same time that it said the perineal repair was done? Well, she was, the placenta was delivered at 126 and there was no pushing after 126. So at 131, according to the vaginal delivery note, the doctor wrote that the repair was completed, was done. But the report said that she was still pushing at 130. The vaginal delivery note? Yes. From my understanding, it did not. I mean, it was pretty much, she had delivered the, I'm sorry, I don't have the note in front of me. But from what I recall of the note, that it was very scant to begin with. And number two, I don't recall the pushing on the vaginal delivery note. I just know that Dr. Dunn had completed her repair by 116, at 130 p.m. Okay. Thank you. One quick question. On the numbers issue, the deposition, the doctor could not recall specifically how many level three or level four tears she repaired. And then in trial, she ends up making estimations. I have not read that portion of the record. Was she cross-examined on that? Did the court allow, you know, the classic cross-examination? That's not what you said. You remember the deposition, you remember I was there, your lawyer was there to answer these questions. Did that happen? Cross-examination was permitted, yes. Okay. The question is, plaintiff didn't have a chance to be able to go into the similarities that may occur. Like with habit testimony, you have to show that it's happened numerous times and it doesn't vary from, in this case it would be the procedure wouldn't vary from patient to patient, and plaintiffs were not given an opportunity to at least delve into that kind of testimony because we were finding out for the first time at trial what her, actually her habit was. And without the note and without any independent recollection of what the doctor recalled in suturing the repair, Dr. Dunn really, her only basis was to talk about habit testimony. So that was very important to get that out, and it should have been disclosed in the 213s. Thank you. Anything else? Thank you. You will have five minutes for rebuttal. Thank you. Mr. Howey. Good morning. May it please the court. I'm Scott Howey, and I represent the defendants' affilies in this matter, Dr. Jennifer Dunn and DuPage Health Specialists. It's good to be with you. The plaintiffs point to no abuse of discretion in the trial court's rulings, let alone any ruling that caused them unfair prejudice. Dr. Dunn laid a proper foundation for evidence of habit in performing the procedure at issue based on testimony that even the plaintiffs don't challenge as undisclosed, and even the testimony that they do challenge was fairly within her disclosure under Rule 213, as elucidated by the plaintiff's counsel herself at the discovery deposition. Nor did the plaintiffs point to any abuse of discretion in the admission of testimony regarding the delivery note or the photo, all of it either expressly disclosed or fairly within a logical corollary under Rule 213. The plaintiffs give this court no reason to disturb the jury's verdict, and the judgment on that verdict should be affirmed. First, Your Honors, it was no abuse of discretion for the trial court to allow Dr. Dunn to testify to her habitual procedure of repairing third-degree perineal tears following childbirth, because the defense properly disclosed her testimony prior to trial sufficient to lay the foundation for habit evidence, regardless of whether there are any numbers involved in that testimony. Indeed, her testimony went unchallenged at trial, that she had been repairing third-degree perineal tears since her very first day of residency. Dr. Dunn testified that her procedure does not vary, has become almost an automatic routine for me to repair every third degree in the same way, she said. And that testimony is what's important for the admission of habit. Numbers can be a factor a court can consider, but what really matters is the invariable degree to which a process is repeated consistently over time. Was that done at deposition, too? It was done at deposition, Your Honor. Page 2121 of the record reflects Dr. Dunn saying that she had been repairing third-degree perineal tears since her first day of residency, and on page 2151, she said, I do it the same way every time. And that's exactly what the cases talk about in terms of what's necessary for the foundation for habit testimony. This court itself called it a regular practice of responding to a particular kind of situation with a specific type of conduct. And that's exactly what Dr. Dunn testified to. Multiple courts in this state have endorsed Cleary and Graham's treatise on Illinois evidence, that foundation is sufficient where the conduct has become, as many courts put it, semi-automatic, invariably regular, and not merely a tendency to act in a given manner. And that, again, is exactly what Dr. Dunn testified to both at trial and as disclosed during her deposition testimony. The courts recognize that it's the notion of virtually invariable regularity that gives habit its probative force. A witness might not remember tying his shoes on a Friday last August, but if that issue were to become relevant to a trial, his habit of doing it exactly the same way every time would be probative of that issue. Dr. Dunn testified at trial that not only does she do it the same way every time, but she said it's become almost an automatic routine. And that's almost exactly what the cases talk about when they refer to a semi-automatic routine, something that is invariably regular and performed the same way every time. So that alone is enough foundation. Under even the cases that the plaintiff has cited, it's certainly enough foundation under cases like People v. Keller and the Hodgian v. Holy Family case, both from the First District, both of which talked about habit evidence and found adequate foundation for that habit evidence without the sorts of numbers that the plaintiff contends are necessary for this court. In fact, there is no court in this state that has found that the specific numbers of times that a procedure is performed or an action or something referred to as habit, there's no need for any particular number, there's no need for statements as to how many times or the numbers of times that something is performed. Cases like Keller and like Hodgian found habit without having those sorts of numbers. And those are cases that reflect the invariably regular nature of conduct, the semi-automatic conduct that Dr. Dunn testified to in this case. So what the plaintiff's focus on is a fleeting aspect of her testimony regarding the number of times that she had done this procedure. The fact is that she was not asked at her deposition how many times, or to estimate the number of times that she had performed the procedure. She was asked how many times she'd done it. She said she didn't know. She was asked if she recalled the number of times, and she said she couldn't. But the only place that she was asked to estimate the number of times she might have performed this procedure was during the time of her residency. And that is only a small portion of her career, by far the minority portion of her career, certainly at the time of trial, and even, I believe, at the time of the events at issue. And so what the trial court found, after examining her deposition testimony very closely, it held that she had not been boxed out or capped out in the terminology. I'm not sure the proponent's burden. Even if the plaintiff attorney didn't ask her a single question about it, it's your burden under Illinois Law 213. You would have had the burden of asking her all the questions that need to cover every topic if you could get into a trial. It's not on her. It's actually on you, even if it's her client. I'm sorry, even if it's your client. That's fair, Your Honor. The disclosure requirement is on each party. In this case, the written disclosures, the answers to interrogatories, reflected that Dr. Dunn would testify to her experience. And the plaintiff's counsel, and this is well before trial, initiated the process of asking her to estimate the number of times she'd performed the procedure. She started that process but didn't get very far with it and abandoned it fairly early on after asking only questions about estimating the number of procedures during residency. And there were objections. There were objections, but it was a discovery deposition. But really, it should have been you asking those questions. It's your burden to get those disclosures out. It would have been our burden if it was necessary to have those numbers for foundation. We satisfied the burden for foundational purposes simply by having Dr. Dunn testify to the semiautomatic way that she performs this procedure, the fact that she does it every single time and has been doing it since her very first day of residency, as she put it. So the fact is, and the point of foundation here, is that the foundation was laid through other means. And the cases are very clear that foundation doesn't require the sorts of numbers that the plaintiff is complaining about not having. The foundation is laid by the nature of the conduct and its invariably regular nature. And again, got the counsel to acknowledge that cross-examination was allowed on the arguable inconsistency between, at least arguable, I don't remember, I don't know, and that being able to make estimations at trial, that was covered on cross. I don't know that it was not, whether it was covered or not, Your Honor. I believe it wasn't. But that is certainly something that the plaintiff could have covered during cross-examination at trial. And that certainly would become a question of credibility had that cross-examination occurred. And to suggest, as the plaintiff's counsel has done this morning, that she didn't have the opportunity to investigate this is simply at odds with the record. That it's quite clear from the record, both from the discovery deposition and from the events of trial, that this was a subject that could have been explored, either through the specifics of the numbers had they been necessary during the discovery deposition, or conceivably through the issue of credibility at trial, if Dr. Dunn had testified to something that the plaintiff felt was a contradiction of what had come from the deposition. With respect to what the plaintiff has characterized as the second issue at argument this morning, the question of the vaginal delivery note, it's important to recognize that there was no abusive discretion in admitting testimony that the vaginal delivery note did not reliably record the time, the specific clock time of the procedure, the time that the procedure was finished. The plaintiff's argument is based on the notion that Dr. Dunn had previously confirmed a four-minute repair. Which is not the case. They back up that suggestion only by torturing and even misrepresenting and misquoting the question and answer from the deposition testimony to make it look as if she confirmed a 1.30 completion of the procedure. That is not the case. She has said, has always maintained, and is a crucial part of the defense position, and a disputed issue at trial, that it always takes 20 minutes to perform this procedure. That's part of why the habit evidence is important, because it's a 20-minute procedure. Dr. Dunn testifies it always takes her at least 20 minutes. And her expert backed that up also from a slightly different perspective. Dr. Feldstein testified that a four-minute repair of a third-degree perineal tear is absolutely impossible. Simply impossible, I think, is the phrase he used. But he certainly said that this is something that just can't be done. And so consistent with that, the idea that a vaginal delivery note that appears to reflect a 1.30 completion time and appears to reflect a four-minute procedure, to testify and to say that that is not a reliable note with respect to the time is absolutely consistent with the entire theory of the case, as well as the 213 disclosures with regard to what the witnesses would say. That is, at the very least, a logical corollary to the disclosed position and testimony of the defendants and their experts that this procedure took at least 20 minutes. That's also consistent with the testimony of Dr. Dunn at her deposition, when the testimony is correctly reflected, that the time that is placed on the delivery note is the time that she wrote there. And the trial judge was very sensitive to that distinction when he exercised his discretion to allow the testimony to be given, that the note didn't accurately reflect what had happened. He recognized that Dr. Dunn did not testify at her deposition that 1.30 was the clock time of completion. He recognized that she testified simply that 1.30 was the time she placed on the note. And that is also consistent, again, with her expert Dr. Feldstein's disclosed testimony that anything reflecting a four-minute repair would be impossible. So in exercising his discretion to determine whether this was admissible testimony and whether it was consistent with the Rule 213 disclosures, the trial judge did recognize that important distinction. And I want to draw out as well the fact that that important distinction is very much blurred in the plaintiff's initial brief. Now it does appear to be, and I'll give the plaintiff's counsel the benefit of the doubt, it does appear to be a garbling and accidental and inadvertent misquoting. But please realize in reviewing the briefs that the testimony as quoted in the plaintiff's brief with respect to the time of completion is not an accurate quote. And we have set that straight. I think we've done an adequate job of setting that straight in our response brief and the plaintiff acknowledges the error in her reply. But that is an important distinction there that the trial court, again, was very sensitive to and applied very carefully in ruling on this testimony. Finally, with respect to the photograph, the only argument that the plaintiff preserved in this appeal with respect to her initial brief was the argument not about whether the tear was a third degree or a fourth degree tear. That's not the opinion that the initial brief preserved. The initial brief talks about the basis for that opinion. It's quite clear in repeatedly saying that what they challenge was Dr. Feldstein's testimony that one of the photographs, one of the 17 photographs of Mrs. Baxter's perineum, was the basis for his opinion of what degree tear she had. That basis was one of the photographs that was taken by Mrs. Baxter herself. And the plaintiff conceded in their brief that Dr. Dunn's disclosure, and I'm quoting, mentioned that Dr.—I see that my time has expired, so I might take a moment. You can finish your sentence, yes. The plaintiff's brief conceded that Dr. Dunn's disclosure mentioned that Dr. Feldstein, and I'm quoting, reviewed Sarah's deposition as well as all exhibits, which included all photographs. There's not any question that the photographs were disclosed as the basis for his opinion. The fact that he relied on one of them is no violation of Rule 213 whatsoever. I welcome any further questions, but I would ask the court to affirm. Thank you. Ms. Shafrick, any rebuttal? Okay, going back to habit, Your Honors, I just want to say that every surgery is necessarily unique and varies from patient to patient and depending on the nature of each patient's possibly body habitus or other things that are going on the body. And so I don't think you can actually say that this procedure would not vary from patient to patient. And second of all, for habit, to get habit testimony in, you have to be able to describe the number of times you've done it to show that it's a habit. So if we go to... Why is that? Pardon? Why is that? I mean, can't you have a habit if you do five and you do five the same way every time? Is that not a habit? According to the cases on habit, it has to be done numerous times. And in the one case, People v. Miller, the nurse had taken blood five to seven times, which the court did not find that that was sufficient enough to create a habit. And it further went on to say that in Miller, the court stated, Habit is a person's regular practice of responding to a particular kind of situation with specific type of conduct. It is only when examples offered to establish such habit are numerous enough to base an inference of systematic contact. And at this point, we don't really know how many repairs Dr. Dunn did based on her deposition testimony. I asked her if she'd done more than 30, less than 30. She did not know. And we were entitled to know that, and it was on the burden of defense to disclose that information prior to trial. Furthermore, if the vaginal delivery note was not an accurate source of information as to the time that it took Dr. Dunn to complete her repair, then that testimony should have been declared in her 213s or in her written opinions. And it was not. This was the first time we heard it at trial. And plus, the other thing I want to bring up, between the time of her deposition and up until the time of trial, at some point, Dr. Dunn's memory was refreshed so that she could tell the plaintiffs, Oh, by the way, these are the number of times I've repaired. I have performed repairs on third and fourth degree tears. And that was never done, and that is a violation of, I believe, 213i, where if any information becomes new between the time you declare your 213 written opinions, you have to disclose it to the plaintiff or the opposing party. And to be a logical corollary for information, and that goes to the photographs and also to the vaginal delivery note, in your 213s, you have to talk about or disclose those opinions. If it's not in your 213s, it's not a corollary. A corollary is when you mention or reply to the facts. And what that really is, if the photograph did not depict a third degree, as Dr. Feldstein testified to, is more a new basis rather than a corollary. Because in his deposition, he said, Oh, yeah, I looked at all these photographs, but he never said in the 213s, exhibit number 17 is what I relied on to say that Ms. Baxter had a third degree tear. That was never done. And as Steve tells us, that if an opinion is important to your case, to prove your case, then it has to be disclosed. If it's not disclosed, then, you know, you can't testify to it. It's just not there. An experience, again, into the Doctors' 213, again, is a broad description. It's more of a catch-all phrase. Again, if they wanted to talk about her habit, they needed to disclose what her habit was and the number of times she repaired. So you took the doctor's testimony. And what you're saying is it would have been defendant's burden to show him that picture during the deposition, you should say. Yes. And ask that question, get that opinion, because it's their burden. Correct. And they should have shown that particular photo at the deposition, asked the question, and gotten that specific opinion prior to trial. Correct. Are there any other questions? I am. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.